### LIVERS v. FARIES MFG. CO. et al.
### Civ. No. 611.

United States District Court
S. D. Illinois, S. D.
Aug. 5, 1948.

Gillespie, Burke & Gillespie, and Frank W. Young and Hugh J. Dobbs, all of Springfield, Ill., for plaintiff.

Carlton Hill, of Chicago, Ill., and Giffin, Winning, Lindner, Newkirk & Jones, of Springfield, Ill., for defendant Faries Mfg. Co.

LeForgee & Samuels, of Decatur, Ill., for defendant W. J. Grady.

BRIGGLE, Chief Judge.

This cause having been heretofore submitted to the Court on the pleadings and proofs of the respective parties; and the Court, having now fully considered the briefs filed by the respective parties, and being fully advised in the premises, finds the facts as follows:

1. Plaintiff, John F. Livers, at the time of filing this suit was a resident of Kansas City, Missouri. Defendant, Faries Manufacturing Company, is an Illinois Corporation and has an office and principal place of business at Decatur, Illinois. The controversy involves in excess of $3,000.

2. John F. Livers, entered the employ of the defendant corporation on May 1, 1940, at an agreed salary of $400 per month.

3. The plaintiff upon entering the employ of the defendant corporation was assigned to "Development work".

4. That prior to entering the employ of the defendant corporation, plaintiff was widely known in the industry as a designer of lighting fixtures; that he was the inventor of patented designs relating to lighting fixtures; that he was the patentee of at least one mechanical patent on a lighting fixture; that he had been engaged in the lighting fixture business for many years with Bailey-Reynolds Chandelier Co., of Kansas City, Missouri, having risen to the position of Sales Manager and finally

Vice President and General Manager of that company and that after leaving the employ of Bailey-Reynolds Chandelier Co., plaintiff engaged in the lighting fixture business at Kansas City, Missouri, under the name of Livers Lighting & Bronze Company of which he was President and General Manager. The plaintiff personally designed lighting fixtures while associated with both of these companies.

5. That the inventions which resulted in the patents in controversy were all made by plaintiff in the course of his employment by the defendant, Faries Manufacturing Company, and pursuant to his assignment by that company to "development work" when he entered the employ of the company on May 1, 1940.

6. That the inventions which resulted in the patents in controversy were all made by plaintiff and assigned by him to the company without protest within a period of two months and seventeen days after plaintiff entered the employ of the company and after his original assignment by the company to "development work."

7. During the first several months of his employment by defendant, plaintiff worked exclusively at the development and design work to which he was assigned when he entered the employ of the company on May 1, 1940.

8. Original samples of the patented articles in controversy were made at the expense of the company and the applications for patent were prepared and filed by the company patent attorney at the expense of the company. While some preliminary work was planned and carried on by plaintiff at his living quarters, the actual detailed study of these designs was done by him at the plant of defendant, Faries Manufacturing Company.

9. It was a regular custom of the defendant company, in effect during the period of plaintiff's employment and for many years prior thereto, to require assignment to the company of inventions made by employees in the course of their employment and relating to the products of the company. This custom, although not specifically called to the attention of plaintiff at the time of his employment, was known generally to those employees of the company who had to do with development work or the making of new or improved products. Pursuant to this custom more than 59 designs and more than 24 mechanical patents were assigned to the defendant company by various employees during the period from 1916 to 1948.

10. The first three inventions which resulted in the patents in controversy were assigned by plaintiff to defendant before defendant made a loan to plaintiff to clear up his personal debts and before defendant assisted plaintiff in purchasing a house in Decatur.

11. Plaintiff was employed by defendant as a designer and for development work and the defendant Grady did not at the time of plaintiff's employment or at any other time promise to make plaintiff manager of defendant company.

12. On February 13, 1941, plaintiff first made claim that he should be remunerated for the patents that he had assigned. This was coupled with a complaint that he had not received a salary increase alleged to have been promised to plaintiff.

13. Plaintiff's demands for salary adjustment coupled with demands for compensation for the patents that he had assigned to the company were again asserted before he left the employ of the defendant company in March of 1942 and this claim for back salary and patent compensation was again asserted at a conference between plaintiff and Mr. Grady held in Chicago in April of 1942.

14. Following this conference with plaintiff in Chicago in April of 1942, Mr. Grady wrote plaintiff on April 27, 1942, enclosing a check of Faries Manufacturing Company payable to plaintiff in the amount of $152.74 "to balance this account." This check was duly endorsed and promptly cashed by plaintiff. Defendant left the employ of the company of his own volition in March of 1942.

15. At the time of entering the employ of defendant, plaintiff was an experienced business man who had been long associated with the lighting fixture business. He was the patentee of inventions which he had assigned to others and the owner of at

least one patent and one pending application for patent (not here involved) which he had not assigned. All of plaintiff's negotiations with defendant Grady at the time of and before his employment were at arms length.

16. This record fails to establish that the relationship between plaintiff and the defendant company and/or W. J. Grady was other than that which normally existed between the defendant company, Mr. Grady, and other employees of the company. There was no overreaching of the plaintiff by either of defendants.

17. The inventions in controversy were assigned by plaintiff to defendant without protest and for a valuable consideration.

18. Although plaintiff requested additional compensation for his assignment to defendant of the patents in controversy as early as February 13, 1941, plaintiff nevertheless continued to assist defendant in its attempted exploitation of said inventions until he voluntarily left the employ of the company more than a year later. This suit was not brought until November 16, 1945, nearly five years after plaintiff first demanded compensation for his assignment of the patents. During all of this time defendant had continued (except for wartime limitations) with the manufacture and sale of devices embodying certain of the inventions in controversy and the controlling interest in the defendant company was purchased by others who had no way of knowing that this suit would be brought.

19. This record establishes that W. J. Grady never at any time, either directly or indirectly, owned a majority of the capital stock of Faries Manufacturing Company.

### Conclusions of Law.

The Court states its conclusions of law, as follows:

1. That the Court has jurisdiction of the parties and the subject matter.

2. Plaintiff has failed to establish the material allegations of his complaint by a preponderance of the evidence.

3. The inventions in question were made by plaintiff in the course of his employment by defendant and as a part of his duties in connection therewith. They were developed and patents obtained at company expense.

4. That no misrepresentations or fraud were practiced upon the plaintiff either in connection with his employment or the assignments of the patents in question.

5. The patents in question became and are the property of the defendant company and the assignments by the plaintiff to the company were proper and supported by a valuable consideration.

6. That plaintiff is not entitled to a reassignment of the patents or an accounting.

7. That the complaint herein is without equity and should be dismissed.

8. The conclusions here reached are not based upon any asserted laches of plaintiff, or upon any supposed settlement of the controversy.